# In the United States Court of Federal Claims

No. 19-904 C
(Filed: October 28, 2021)

```
* * * * * * * * * * * * * * * **   *
                                   *
CRAIG JOHNSON, JR.,                *
                                   *
              Plaintiff,           *
                                   *
       v.                          *
                                   *
THE UNITED STATES,                 *
                                   *
              Defendant.           *
                                   *
  * * * * * * * * * * * * * * * **  *
```

*William E. Cassara*, William E. Cassara P.C., of Evans, GA, for Plaintiff.

*Richard P. Schroeder*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

 Plaintiff, Craig Johnson, Jr., filed a complaint before this Court to challenge the Board for Correction of Naval Records' ("Board") denial of his application to correct his military record. While a member of the Active Reserve ("AR") of the United States Marine Corps ("USMC"), Plaintiff failed to comply with orders to relocate to a new duty station. Plaintiff's refusal to execute his orders resulted in his transfer out of the AR Program to the Individual Ready Reserve ("IRR") and the entry of a reenlistment code that prevented his promotion to warrant officer. In his complaint, Plaintiff alleges he was entitled to notice and a separation board prior to his transfer to the IRR and the entry of the reenlistment code. On remand, the Board rejected Plaintiff's arguments regarding his entitlement to additional notice and a separation board and his request to remove the reenlistment code from his record. Before the Court are the parties' cross-motions for judgment on the administrative record. ECF Nos. 33, 39. For the following reasons, the Court has determined that the Board's decision was not arbitrary, capricious, or an abuse of discretion and was in accordance with applicable law.

# BACKGROUND

## A. Factual History

Plaintiff enlisted in the U.S. Marine Corps Reserve ("USMCR") on April 13, 1999. AR 469. He joined the USMCR AR Program on May 12, 2006, and he reenlisted in the AR Program on November 25, 2008, for three years. *Id*. at 469-70. Unlike other reservists, those in the AR Program operate on a full-time basis to support the various functions of the USMCR. *Id*. at 470; Marine Corps Order ("MCO") 1001.52J. AR Program Marines can be employed in: "(1) organizing, preparing and administering policies and regulations affecting the USMCR; (2) training and instructing the USMCR; (3) recruiting and retention for the USMCR; [and] (4) administration of the USMCR personnel." MCO 1001.52J.

On November 10, 2011, Plaintiff again reenlisted in the AR Program, this time for 48 months. AR 470. Because he "successfully reenlisted for a second tour in the AR Program," Plaintiff became a "Career Designated Marine" as defined under MCO 1001.52J. AR 470. During this enlistment, Plaintiff was issued permanent change of station ("PCS") orders on March 17, 2013, to relocate from Virginia Beach, Virginia, to Phoenix, Arizona, to serve as a recruiter for 36 months. His report date was June 9, 2013, which meant that he would have only served in this assignment for 29 months before his scheduled end of active service ("EAS") date of November 9, 2015. *Id*. However,

> [c]areer enlisted Marines in receipt of PCSO's issued by the CMC [Commandant of the Marine Corps] who do not have sufficient obligated service to complete the prescribed tour will be immediately afforded the opportunity to extend/reenlist in order to have the required active service. When Marines state that they do not desire to extend/reenlist, the CMC (MMEA) will be promptly notified, i.e., within 10 days of the date the orders are received at the command reporting unit level. Career enlisted Marines who do not extend/reenlist in order to qualify for assignment will sign the following page 11 SRB entry.

MCO P1300.8R ¶ 1102.

Because Plaintiff believed that he would have difficulty selling his house in the Virginia Beach area,[1] he unsuccessfully attempted to have his orders changed so that he could be posted closer to Virginia Beach to manage this potential "financial hardship." ECF No. 1 ("Compl.") ¶ 7; AR 470. Before his PCS began, Plaintiff's superiors denied his attempts to switch orders with colleagues or obtain an extension at his current duty station. Compl. ¶ 7; AR 470. After these failed attempts to avoid his PCS, Plaintiff refused his orders to relocate. AR 470.

As memorialized in a June 10, 2013, email from his Sergeant Major to his Master Sergeant, Plaintiff was apprised of the consequences of declining to execute his PCS orders and was counseled to reconsider. *Id*. The pertinent section of the email reads:

---

[1] According to Plaintiff, he learned that his "neighbors in Virginia Beach were having to 'short-sell' their home, which would immediately impact the anticipated sale value of [his] home." AR 470.

SSgt Johnson has elected not to execute his orders.  I have spoken to him and he
knows the outcome of his decision. . . .  He [sic] reasoning is that it would create a
hardship for his family.  I have tried to get him to use sound judgment in his
decision making, but unfortunately he came to this conclusion.

AR 99.

As a result of failing to execute his PCS orders, on June 30, 2013, Plaintiff was
transferred from the AR Program to the IRR and issued an RE-3O code regarding his
reenlistment eligibility under the authority of Marine Corps Separation Manual
("MARCORSEPMAN") 1005 ¶ 3 and Marine Administrative Message ("MARADMIN")
552/12.  AR 62; AR 470.  As a result of the assignment of this code, Plaintiff signed an
"administrative remark" in his service record referred to as a "page 11 entry" that expressly
states that "I have been advised that Marines assigned this code are not eligible for promotion,
reenlistment, commissioning or warrant officer programs, special education programs or
involuntary separation pay unless specifically authorized by the [Commandant of the Marine
Corps]."  AR 45.  Roughly three months later, on September 23, 2013, Plaintiff was mobilized to
the AR Program from the IRR and stationed in Quantico, Virginia.  He was preliminarily
approved for appointment to warrant officer on December 13, 2013.  AR 470-71.  However, on
January 14, 2014, Plaintiff was informed his appointment would be delayed due to the RE-3O
code in his record.  AR 471.

**B.  Procedural History**

On June 30, 2016, Plaintiff wrote to the Secretary of the Navy requesting removal of the
RE-3O code.  AR 91-92.  After being informed that he needed to apply initially to the Board to
remove the RE-3O code from his record, Plaintiff petitioned the Board on January 18, 2017.
AR 80.  The Board denied Plaintiff's petition, and he filed an appeal on November 3, 2017,
asking the Board to reconsider its earlier denial.  AR 7-8, 26.  This appeal was denied on
September 27, 2018.  AR 10-11.  Therefore, on June 20, 2019, Plaintiff filed a complaint in this
Court.  In his complaint, Plaintiff asserts that the USMC "has failed to pay Plaintiff the pay and
allowances that he is entitled to receive, under 37 U.S.C. §204, as a result of his wrongful
separation in violation of the Marine Corp Orders and Regulations providing for notice and an
opportunity for separation board before separation."  Compl. ¶ 24.

On November 2, 2019, the Court remanded the case to the Board for further review.  ECF
No. 13.  On remand, the Board again denied Plaintiff's request to have his RE-3O code removed.
The Board determined that "it was not error or injustice for the Marine Corps to follow the
requirements of MARADMIN 552/12 and release [Plaintiff] from the AR Program at the
effective date of the orders and assign [Plaintiff] an RE-3O reenlistment code after [he] refused
to execute [his] PCS orders to Phoenix, Arizona."  AR 478.  According to the Board, because
Plaintiff

elected to participate in the AR Program, subject to its additional requirements for
Reservists, . . . [his] election to refuse orders subjected [him] to the consequences
detailed in the MARADMIN for same: an accelerated EAS and RE-3O

> reenlistment code noting [his] refusal of orders.  Although not required, the Board
> found that the Page 11 entry and discussion with [his] senior enlisted member
> constituted appropriate notice and counseling, where none was formally required,
> for the results of [his] election to refuse PCS orders.

*Id*.  Moreover, the Board noted that because Plaintiff was a Career Designated Marine in the AR
Program whose specialty was as an Administrative Specialist, he was required to "strive to
become the expert on [Reserve Component] issues and advise other Marines unfamiliar with the
AR Program on current policies and responsibilities" and thus should have been acutely aware of
the consequences of his actions in refusing his PCS orders.  AR 472 (quoting MCO 1001.52J)
(internal quotation marks omitted).  Finally, the Board concluded that there was

> insufficient evidence of an error or injustice in the Page 11 counseling or the
> issued PCS orders, based on the emails confirming [Plaintiff's] understanding of
> said consequences, paperwork that was completed, and [his] familiarity with
> administrative affairs per [his] specialty, . . . [to] overcome the presumption of
> regularity that [he was] informed that [his] refusal of orders would result in being
> released from the AR program at the effective date of the orders.

AR 478.

## DISCUSSION

### A.  Legal Standard

The Court may grant a motion for judgment on the administrative record if it determines
that a party has met its burden of proof based on the evidence in the record in light of the
disputed and undisputed facts.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir.
2005); *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).  In considering a
motion for judgment on the administrative record in a military pay case, the Court "will not
disturb the decision of [a corrections board] unless it is arbitrary, capricious, contrary to law, or
unsupported by substantial evidence."  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir.
2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)).  It is well
settled that "responsibility for determining who is fit or unfit to serve in the armed services is not
a judicial province; and that courts cannot substitute their judgment for that of the military
departments when reasonable minds could reach differing conclusions on the same evidence."
*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted).  Furthermore,
"military administrators are presumed to act lawfully and in good faith like other public officers,
and the military is entitled to substantial deference in the governance of its affairs."  *Dodson v.
United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

The Court may set aside a corrections board's decision if a plaintiff can demonstrate "by
cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir.
1986), that the corrections board "entirely failed to consider an important aspect of the problem,
offered an explanation for its decision that runs counter to the evidence before the agency, or [the
decision] is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  However, "[w]hen substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989).  The Court's review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence."  *Heisig*, 719 F.2d at 1157.

## B.  Analysis

Plaintiff claims that the USMC has failed to provide "the pay and allowances that he is entitled to receive, under 37 U.S.C. §204, as a result of his wrongful separation in violation of the Marine Corp Orders and Regulations providing for notice and an opportunity for separation board before separation," and that the Board's decision not to correct this alleged error is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Compl. ¶ 24.  Therefore, in order to prevail in this case and overturn the Board's decision not to correct his military record, Plaintiff must identify some authority that entitled him to a separation board and greater notice than he was accorded by the Marine Corps prior to his separation and transfer to the IRR.  For the reasons explained below, as the Board correctly determined, Plaintiff has failed to identify any applicable provision that entitled him to either a separation board or greater notice than he received prior to his separation and transfer to the IRR.

### 1.  The Board Correctly Found that Plaintiff was Properly Separated and Transferred to the IRR.

At the time Plaintiff refused his PCS orders, he was a "Career Designated Marine." AR 470.  Importantly, MARADMIN 552/12 provides that "Career Designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR Program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O enlistment code." AR 24.  As the Board correctly observed, this is exactly what happened when Plaintiff refused his PCS orders: he was released from the AR Program with an RE-3O code.  AR 474.  This is consistent with the MARCORSEPMAN, which provides that,

> [e]xcept for reenlistment or when discharge is otherwise directed by competent authority, enlisted Marines who have not completed the military service obligation prescribed in 10 U.S.C. 651, will not be discharged upon expiration of enlistment.  They will be released from active duty and transferred to the IRR. *Marines separated before their expiration of enlistment will be transferred to the IRR subject to the guidance in paragraphs 6311.3 and 6401.5.*[2]

MARCORSEPMAN 1005 ¶ 3 (emphasis added).

Marine Corps Order P1300.8R ¶ 1102 sheds additional light on the authority for Plaintiff's separation.  According to that order, career enlisted Marines, like Plaintiff, who receive PCS orders that extend beyond their then-current end of active service date have an

---

[2] Paragraphs 6331.3 and 6401.5 address when transfer to the IRR is appropriate versus, for example, discharge from the Marines.

option: either "extend/reenlist in order to have the required active service," or, if they do not desire to "extend/reenlist in order to qualify for assignment[,] [they must] sign [a] page 11 SRB entry." MCO P1300.8R ¶ 1102. The applicable page 11 entry states that:

> I have been assigned reenlistment eligibility code RE-3O. Reason: I will not reenlist/extend to comply with PCS orders. I have been advised that Marines assigned this code are not eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs, or involuntary separation pay unless specifically authorized by the CMC (MMEA). I have been given the opportunity to submit a statement and that statement, if submitted, will be filed on the document side of my SRB. I choose to/not to submit a statement.

AR 20. Plaintiff signed this page 11 entry on June 11, 2013. *Id.*

In sum, as the Board correctly determined, Plaintiff was properly separated and transferred to the IRR pursuant to authority provided in MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, none of which require a separation board or greater notice than the page 11 entry that Plaintiff signed.[3]

## 2. The Orders and Policies Plaintiff Relies on are Inapplicable to His Case.

Despite the above cited authorities, which clearly set forth the ramifications and procedures followed in cases in which a Career Designated Marine refuses to follow PCS orders, Plaintiff nonetheless offers several unavailing arguments as to why he was entitled to notice and a separation board prior to his separation and transfer to the IRR. First, Plaintiff incorrectly relies on chapter 6 of the MARCORSEPMAN, which under certain circumstances provides for written notice requirements and a right to a separation board for Marines separated before the end of their enlistment periods. Plaintiff argues that because he had "over two years left on his enlistment contract" before being transferred to the IRR, the USMC was required to follow the procedures and instructions contained in chapter 6. ECF No. 33 at 4. There are at least two fundamental problems with Plaintiff's argument. First, the procedures and instructions for administrative separations contained in chapter 6 of the MARCORSEPMAN do not apply to Plaintiff's separation and transfer to the IRR, because the reason for Plaintiff's separation and transfer is not covered by chapter 6. *See* MARCORSEPMAN 6201 *et seq.* (listing the reasons covered by chapter 6 that permit a commander to recommend involuntary separation of a Marine before the expiration of the Marine's current contract).

Second, Plaintiff fails to heed the opening paragraph of chapter 6, which states that

> [t]he procedures and instructions in this chapter pertain to the administrative separation of Marines before completion of active or obligated service. *Unless*

---

[3] Although not required by Marine Corps orders or regulations, Plaintiff also received counseling on the ramifications of his decision from his direct superior. AR 99 ("SSgt Johnson has elected not to execute his orders. I have spoken to him and he knows the outcome of his decision. . . . He [sic] reasoning is that it would create a hardship for his family. I have tried to get him to use sound judgment in his decision making, but unfortunately he came to this conclusion.").

*specifically authorized by separate order*, only the reasons contained in this chapter may form the basis for a Marine's separation, whether voluntary or involuntary.

MARCORSEPMAN 6001 (emphasis added).  In other words, the chapter 6 procedures and instructions Plaintiff claims entitle him to notice and a separation board prior to his administrative separation are superseded when "specifically authorized by separate order." *Id*. As the Board correctly determined, a separate order did apply to Plaintiff's circumstances, MCO 1001.52J, and, therefore, the procedures and instructions in chapter 6 of the MARCORSEPMAN were superseded and inapplicable to Plaintiff's separation.  AR 477.  Rather, MCO 1001.52J provides that adjustments to the AR Program will be made separately through the MARADMIN. MCO 1001.52J, 2-10 ¶ 11; *see* AR 474.  MARADMIN 552/12 is the policy that applied to Plaintiff's circumstances, and, as discussed above, it provides that "Career Designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code."  AR 24.  Thus, under the authority of MARADMIN 552/12, Plaintiff's EAS date was properly shortened to June 30, 2013, and he was transferred to the IRR.

Plaintiff attempts to avoid the consequences of MARADMIN 552/12 by arguing that because it was not in existence at the time he reenlisted, it cannot supersede his enlistment contract.  However, as the Board observed, "Marines are obligated by the Uniform Code of Military Justice to follow lawful orders, regardless of whether they existed at the time of enlistment," the provision in question "was a lawful order at the time [Plaintiff] refused [his] PCS orders to Phoenix," and Plaintiff's "command was obliged to follow MARADMIN 552/12." AR 474.  Accordingly, MARADMIN 552/12 applied to Plaintiff even though it was promulgated after he reenlisted.

Moreover, despite Plaintiff not being entitled to the notice requirements specified in chapter 6 of MARCORSEPMAN, the Board determined that Plaintiff was nonetheless well aware of the consequences of disobeying his PCS orders.  For instance, a June 10, 2013, email from his direct commander memorialized that Plaintiff was counseled on the consequences of refusing his PCS orders, "knows the outcome of his decision," was asked to reconsider rejecting the orders, and advised to use "sound judgment in [] decision making."  AR 99.  Moreover, the Board observed that

as a Career Designated Marine in the AR Program, and especially noting [his Marine occupational specialty] and [his] rank, [Plaintiff was] not only required to be familiar with MARADMIN 552/12 and its ramifications on refusing orders, but [he was] also required to have knowledge in order to properly advise subordinates in the AR Program.

AR 476.  Thus, even without notice, which the Board determined was not required, Plaintiff would have been cognizant of the ramifications of his refusal to follow PCS orders.  The Board found his awareness of the ramifications of his actions was further evidenced by Plaintiff's "attempts to both swap orders with another individual, as well as to extend [his] enlistment at [his] then-duty station."  *Id*.

Plaintiff's argument for why he was entitled to a separation board prior to his separation and transfer to the IRR fares no better than his argument regarding notice. As discussed above, the USMC policies and orders that govern Plaintiff's separation and transfer to the IRR do not require the provision of a separation board to Career Designated Marines who refuse to follow PCS orders. The closest that Plaintiff comes to demonstrating a requirement for a separation board is chapter 6 of the MARCORSEPMAN. But, as discussed above, his chapter 6 grounds fail because chapter 6 is specific regarding the circumstances for which a separation board is required. In fact, chapter 6 contains a table showing the circumstances that require a separation board, and Plaintiff's basis for separation—refusal to follow PCS orders—is not listed among those circumstances. *See* MARCORSEPMAN Table 6-2.

Plaintiff's arguments based on chapter 6 of the MARCORSEPMAN are not well taken. They would require the Court to engage in one of two flawed courses of action. On the one hand, Plaintiff's arguments would require the Court to insert into the specifically listed reasons a USMC commander may recommend involuntary separation of a Marine before the expiration the Marine's enlistment contract a whole new reason—refusal to follow PCS orders—and then further require the Court to decide which of the administrative rules for separating a Marine listed in chapter 6 the USMC is required to follow when separating a Marine under this new court-created reason for involuntary separation. This the Court cannot do. It is up to the USMC, not this Court, to determine the grounds for separating a Marine prior to the expiration of an enlistment contract. Once those rules are established, the Court may ensure that they are properly applied to the extent that their application is within this Court's Tucker Act jurisdiction. The Court cannot, however, establish the rules in the first instance.

On the other hand, Plaintiff would have this Court ignore MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102 to find that the only reasons for separating a Marine prior to the end of his or her enlistment contract are those listed in chapter 6 and that because refusal to follow PCS orders is not listed, Plaintiff should not have been separated and transferred to the IRR. Beyond requiring the Court to ignore established USMC policy and procedure, this seems to the Court to be an invitation to wreak havoc on the USMC. Despite having set forth clear policy on the ramifications and procedures to be followed in cases in which a Career Designated Marine in the AR Program refuses to follow PCS orders, Plaintiff would have the Court effectively disallow those policies, at least until chapter 6 of the MARCORSEPMAN could be amended. Again, this is not something the Court can or will do. MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102 set forth what happens when a Career Designated Marine in the AR Program refuses to follow PCS orders; as the Board correctly determined, they were followed here.

Finally, at oral argument, after Plaintiff's counsel averred that there was additional USMC authority not previously cited entitling Plaintiff to notice and a separation board, the Court gave Plaintiff an opportunity to submit that material through a supplemental brief. ECF No. 51. Based on the discussion of this brief during oral argument, the Court anticipated that the brief would provide USMC orders and policies that Plaintiff had not previously cited. However, rather than cite new USMC authorities that support the sole allegation of Plaintiff's complaint—that the Marine Corps failed to give him "the pay and allowances that he is entitled

to receive, under 37 U.S.C. §204, as a result of his wrongful separation *in violation of the Marine Corp Orders and Regulations* providing for notice and an opportunity for separation board before separation"—Plaintiff referred back to previously made arguments that for the reasons discussed above are unavailing.  Moreover, Plaintiff introduced for the first time a new argument that is outside the allegations of his complaint: that the separation code he received is stigmatizing and, therefore, the Due Process Clause entitled him to notice and a hearing.  The proper place to raise this claim was in Plaintiff's complaint, not in a supplemental brief filed after oral argument.  *See Casa de Cambio Comdiv S.A., de C.V. v. United States,* 291 F.3d 1356, 1366 (Fed. Cir. 2002) (holding allegations not raised in complaint are waived); *Cochrun v. United States*, 621 F. App'x 655, 656 n.1 (Fed. Cir. 2015) ("Because he did not present that claim in his complaint, it is deemed waived.").

However, even had Plaintiff properly raised this additional claim in his complaint, it would have nonetheless failed.  The foundation for Plaintiff's belatedly raised due process claim is an allegedly stigmatizing separation code.  But the RE-3O code that Plaintiff received is not stigmatizing.  First, the RE-3O code accurately reflects the reason that Plaintiff was transferred from the AR Program to the IRR: he decided not to extend or re-enlist because doing so would have required him to move from Virginia Beach to Phoenix.  Thus, the code does not reflect misconduct or any sort of behavioral issue.  Second, the non-stigmatizing nature of the code is reflected in the fact that in just under three months after receiving the RE-3O code and being transferred from the AR Program to the IRR, Plaintiff was mobilized back to the AR Program.

**CONCLUSION**

For the forgoing reasons, Plaintiff's motion for judgment on the administrative record is **DENIED** and the government's cross motion for judgment on the administrative record is **GRANTED**.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge